UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT J. BRUNO | * | CIVIL ACTION NO. 22-4550 |
| | * | |
| VERSUS | * | SECTION: "T"(1) |
| | * | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. | * | JUDGE GREG G. GUIDRY |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is the Motion to Compel Discovery and for Attorneys' Fees and Costs filed by plaintiff Robert J. Bruno. (Rec. Doc. 19). For the following reasons, the Motion is DENIED in part. Further, certain documents must be produced for in camera review. After the Court reviews the documents in camera, it will address whether any of those documents must be produced.

Background

This lawsuit arises out of a motor vehicle accident on July 18, 2021, that allegedly resulted in serious injury to Mr. Bruno. The other driver—Derrick Deondre Green—rear ended Mr. Bruno's vehicle and is alleged to be solely responsible for the collision. Mr. Green's insurance policy with GEICO provided only $25,000 coverage per person. At all relevant times, Mr. Bruno maintained policies of uninsured motorist coverage with defendants State Farm Mutual Automobile Insurance Co. and State Farm Fire & Casualty Company (collectively, "State Farm"). Mr. Bruno alleges that he supplied State Farm with proof of loss in the form of a report indicating he would need cervical surgery and that he demonstrated Mr. Green was underinsured. Yet, State Farm did not make a tender within 30 days, and Mr. Bruno alleges that State Farm is liable for penalties and attorneys' fees.

1

Of relevance to the present dispute, State Farm received notice that Mr. Bruno had retained counsel on August 13, 2021—less than one month after the accident. On November 4, 2021, Mr. Bruno forwarded to State Farm the report of his physician opining that Mr. Bruno would, more likely than not, need a four-level cervical fusion. On November 8, 2021, Mr. Bruno forwarded a letter from GEICO confirming its insured's coverage limits. State Farm advised no tender was due and offered $2,000. State Farm retained counsel on or about May 2, 2022. On May 4, 2022, State Farm tendered Mr. Bruno's underlying uninsured motorist limits of $250,000, even though State Farm was aware that Mr. Bruno maintained another layer of uninsured motorist coverage with State Farm. Mr. Bruno filed this lawsuit against State Farm on November 17, 2022.

Trial is set to begin on August 21, 2023. The deadline to complete discovery is June 12, 2023.

The present dispute concerns certain documents in State Farm's claims file that it alleges are protected by the attorney-client privilege and/or work-product doctrine. Mr. Bruno contends that because he has alleged State Farm's bad faith, State Farm's claims handling is critical to his case. He seems to argue that he would be unable to obtain the information via other means. State Farm counters that its corporate representative can be questioned about its decision making regarding tenders.

An ancillary issue is that some or all of these documents were inadvertently produced to Mr. Bruno by State Farm on April 28, 2023. It discovered its error on May 1, 2023, and promptly notified Mr. Bruno on May 2, 2023. Mr. Bruno disagreed that all of the documents designated as privileged by State Farm are entitled to such protections and he refused to destroy the documents as State Farm.

State Farm's original privilege log included numerous entries without a creation date as well as several citations to multiple page "email communications" without any indication of whether the email consists of a single email, and email chain, and/or an email with attachments. At the court's request, State Farm produced a supplemental privilege log that provided some additional detail.

Law and Analysis

1. *Attorney-Client Privilege and Work Product Doctrine*

"[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." <u>Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.</u>, 768 F.2d 719, 720 (5th Cir. 1985). The purpose of the privilege:

> is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

<u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981). For a communication to be protected under the privilege, the proponent "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." <u>United States v. Robinson</u>, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis in original).

The work-product doctrine protects from discovery documents and tangible things "prepared by an attorney 'acting for his client in anticipation of litigation.'" <u>United States v. Nobles</u>, 422 U.S. 225, 238 (1975) (quoting <u>Hickman v. Taylor</u>, 329 U.S. 495, 508 (1947)). The work product "privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible

3

future litigation.'" In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000) (quoting United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982)).

Codified at Federal Rule of Civil Procedure 26(b)(3), the work-product protection extends to materials prepared by the party itself and representatives other than attorneys. If the party resisting discovery establishes that the materials are work product, the party seeking discovery can only obtain the documents if they are relevant and proportional to the needs of the case and "it has substantial need for the materials to prepare its case and that it cannot, without undue hardship, obtain the substantial equivalent of the materials by other means." Fed. R. Civ. Proc. 26(b)(3)(A); see Lassere v. Carroll, No. CIV.A. 13-5430, 2014 WL 7139138, at *4 (E.D. La. Dec. 15, 2014). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Campos, 20 F.3d 1171 (5th Cir. 1994) (quoting Nobles, 422 U.S. at 238) (alteration omitted). Thus, even when a party shows it has substantial need for the materials, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. Proc. 26(b)(3)(B). Such materials are known as "opinion work product."

"[M]aterials assembled in the ordinary course of business," are excluded from work-product materials. El Paso, 682 F.2d at 542.

> Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation.

4

Piatkowski v. Abdon Callais Offshore, L.L.C., No. CIV.A.99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000) (footnotes omitted). "[T]he burden of showing that documents were prepared in anticipation of litigation, and therefore, constitute work product, falls on the party seeking to protect the documents from discovery." Id.

"In the realm of insurance claims and litigation, the analysis of whether documents were prepared in anticipation of litigation becomes more complicated. This is primarily because insurance companies are in the business of conducting, investigating and evaluating claims against its policies." Kansas City S. Ry. Co. v. Nichols Const. Co., No. CIV.A. 05-1182, 2007 WL 2127820, at *3 (E.D. La. July 25, 2007). Thus, courts generally maintain a "fact specific" inquiry into "whether a given item of discovery was produced in anticipation of litigation" Id. (quoting S.D. Warren Co. v. E. Elec. Corp., 201 F.R.D. 280, 283 (D. Me. 2001)). "In making this fact-specific inquiry, courts consider the primary motivating purpose behind the creation of the document, more so than the timing of production of that document." Houston Cas. Co. v. Supreme Towing Co., No. CV 10-3367, 2012 WL 13055045, at *3 (E.D. La. Sept. 17, 2012).

  2. *Documents at Issue Here*

     a. *Communications with defense counsel*

The Court finds that all email communications on the privilege log that are labeled as email communications with defense counsel are properly protected by the attorney-client privilege. They purport to be confidential communications between State Farm and its outside counsel regarding the litigation and are therefore protected as providing or receiving legal advice. Although attorney generated documents may sometimes be subject to disclosure, that is because of the "substantial need" exception to the work-product doctrine. That exception is not applicable to attorney-client

5

communications. And Mr. Bruno has not suggested that any exception to the attorney-client privilege (e.g., waiver via disclosure to a third party, the crime-fraud exception) is applicable here.

Of note, the privilege log does not specify the identity of the sender and recipient on the various email communications. The Court finds it is not necessary for counsel to provide further information because the communications involve outside litigation counsel. However, to the extent any of the communications listed (1) do not include counsel or (2) include an individual other than a State Farm employee or outside counsel, such communications are not protected by the attorney-client privilege and must be produced.

    *b. Claims file documents*

With regard to the claims file documents, the Court will focus on the documents that might reveal the information that Mr. Bruno seeks regarding State Farm's decision making process during the claims handling procedure—i.e., whether and when to tender policy limits. These decisions appear to have been made in November 2021 and early May 2022. State Farm retained defense counsel in May 2022—around the time the $250,000 tender was made. Clearly State Farm anticipated litigation at that time. Importantly in this case, Mr. Bruno had retained counsel early on. State Farm learned he had done so on August 13, 2021. The Court finds that from that point forward, State Farm reasonably anticipated litigation.

Nonetheless, that does not mean that all documents created after August 13, 2021, are protected by the work product doctrine. The primary purpose behind their creation must still be the preparation for the anticipated litigation. Documents that would have been created anyway in the ordinary course of business do not fall within that category. Making this distinction on the privilege log alone can be difficult. Here, the Court finds that the following documents must be produced for in camera review:

- Reserve information redacted from Bates 40
- Bates 42-48
- Bates 53-54
- Bates 60
- Bates 69-81
- Bates 93-108
- Bates 147-148
- Bates 150-54
- Bates 163
- Bates 164-70
- Bates 175-79
- Bates 183-211
- Bates 250-276
- Bates 291-346
- Bates 347
- Bates 447-455
- Bates 456-60
- Bates 461-474
- Bates 491-492

State Farm shall produce the listed documents for in camera review by June 9, 2023. To the extent State Farm only claims privilege over a redacted portion of any of the aforementioned documents, it shall clearly identify the portion that was redacted from the version produced to Mr. Bruno.

As to the documents not listed above, the Court finds that State Farm has established that they are protected by the work product doctrine because the documents were created after defense counsel was retained and the document description indicates that their primary purpose was to aid in preparation for litigation.

## Conclusion

For the foregoing reasons, the Motion to Compel Discovery (Rec. Doc. 19) is denied as to the request for State Farm's communications with defense counsel and the work product documents that were not ordered for in camera review. The Court will address the discoverability of the remaining work product documents after in camera review.

New Orleans, Louisiana, this 6th day of June, 2023.

                                                        Janis van Meerveld
                                            United States Magistrate Judge